The last case today, No. 241651, United States v. Willie Richard Minor. Will counsel for appellant please introduce yourself on the record to begin? Good morning, Your Honors. My name is Karen Pickett. I represent the appellant, Mr. Minor. I wanted to start off with a quote from Oliver Wendell Holmes from 1881. My kids would be surprised to know I wasn't alive then, but it says, even a dog distinguishes between being stumbled over and being kicked. And this quote was put in the Rehave case for the proposition that behavior may be an innocent mistake to which criminal sanctions normally do not attach. As Your Honors know, this is Mr. Minor's third trip to the First Circuit. In the second trip to the First Circuit, we had one on the panel decision, and then there was an en banc decision, and there was a lengthy en banc decision, and it was sent back to the district court. One of the issues that I'm raising today don't go to the jury instructions, but go to the judges precluding my client and his former trial counsel in state court from testifying. The trial counsel wasn't allowed to testify at all, and my client's testimony was limited as to what he could say. I think the government's argument is essentially, listen, in the en banc decision, you said these are the instructions, and so if Mr. Minor knew these three elements of what makes something a domestic violence misdemeanor, then there's nothing else that's relevant. And I would argue that's not true at all, and it's especially not true when you consider the Sixth Amendment and how the Supreme Court has said again and again that a defendant has the right to testify in his own behalf, and there's plenty of cases, and I cite many of them in my briefs, that you're allowed to tell a jury, listen, I did this not because I didn't parse out these elements. It's not an ignorance of law case. My client knew that there was a federal prohibition, and he was relying on his state court counsel who said, after we negotiated out this plea deal, which happens all the time in state court, you're allowed to possess a firearm. And we know that Mr. Minor possessed a firearm after the state court conviction for many years. When he was stopped, he told the police officer, oh yeah, I have a gun at home. He literally had no consciousness that what he was doing was wrong. And both Rehafe and a more recent case, Rouen, the Supreme Court has gone to great lengths to say, we don't just tick boxes, okay? We want to know that the defendant has a consciousness of wrongdoing. That's where the criminal law applies. When you were laying this out for us, you said that this wasn't ignorance of the law defense, but I just want to follow up with you about that because I'm just not sure how else to understand it because it seemed to me that what your client wanted to testify to is that he didn't understand the legal impact of what he had pleaded no contest to and that one of the reasons he didn't understand is because he says his lawyer actually told him the opposite and his lawyer would have testified to that. And of course, I understand why your client wanted that to be part of the evidence, but the judge says that's not relevant. His views about the law are not relevant. And of course, judges can exclude testimony for not being relevant or likely to confuse the jury. So how is this not an ignorance of law defense? How is it not about him saying, I misunderstood the legal impact of what I pled to? He understands all the underlying facts. Isn't he saying he misunderstood the legal impact? I would argue, Your Honor, based on some of the cases that I've cited here is that this often comes up, ignorance of law versus evidence towards mens rea, right? And so my argument is that knowledge of a status, right? He's allowed to present evidence that he didn't have that status. He wasn't a domestic violence misdemeanant because he thought he wasn't. And I think that's, and of course the government could go and argue based on their version. It doesn't matter. But if he had been allowed to present his own evidence and the trial counsel, then he could have a good faith defense. When you say he didn't know he had that status, what do you mean by that? It's true that there's evidence that he didn't know he had the status of not being able to buy a gun. Well, he didn't buy a gun. Or possess a gun. But he did know his status as somebody who had been convicted of an offense or that had the elements that make it so that you cannot possess a gun. Right. So I'm not disputing that there was evidence presented of the three elements that make up. So when you say he didn't know he had that status, what is the status you're talking about? Well, first of all, I think, you know, the whole is greater than the sum of its parts. So if you ask a normal, and you can see from the jury question in this case and the question before, and if you run in this case by any normal human being, they would say, well, what did he know? Right, but they ran it by the Supreme Court in Rahafe, not real regular people, and they said that what you need to prove is merely, one, possessing a gun, and two, you knew you had a certain thing, you know, that you were a certain thing. And the thing here is somebody convicted of this kind of crime, which he doesn't dispute. He knows he is. So what he doesn't know is how the things connect, right? He doesn't know how that I am this thing, and I want to possess a gun, and he doesn't understand the connection. And your argument is, and he was misled by someone. And so if you don't have the misled, I think this falls squarely into Rahafe. You may disagree with that, but that's how the Supreme Court decided this should work. My question, I guess, is you do have the added layer of the contention, he was misled by someone he trusts. And, you know, we talk about that usually in areas of the law where your crime has to be committed intentionally. So if I'm going to commit a big fraud, and my lawyer says, well, that's not a fraud, it's legal, that's a defense potentially. But here the problem to me is you don't have to do this intentionally. You just have to know the thing, and possess the gun, and then you're guilty. And so what does the, and he got bad advice, add to it? So I think, Your Honor, when you think about the definition of knowing, and in fact the way the judge instructed the jury in this case about knowing, is that knowing, the mens rea of knowing can be vitiated, I guess, by a mistake or by good faith reliance on counsel. But the knowing here is the possession. He knows he possessed. No, he has to know his status. And he knows his status. And he knows his status, which he does know. He doesn't understand the link. I think it's more, if we break down again what he needed to know, it doesn't seem that you're actually contesting the specific things that he needed to know. So he needed to know that he had a state misdemeanor conviction. He knew that, right? You don't disagree. He needed to know that it involved the use or attempted use of physical force. He knew that as well, and he needed to know that it was against his domestic partner or his wife at the time. And you don't contest any of those things. I guess I do contest the last one, Your Honor, because as it turns out, when the whole history of the plea negotiations and the amendment to the complaint, as that all plays out, Mike, yes, factually that he knows that initially the victim listed on the complaint was his wife. So factually, of course, he doesn't dispute that that was his wife. But for purposes of 922 G9, once he pleads guilty to just a simple assault, he doesn't think that the victim is his wife. But factually, it was about the same event, which was an assault on his wife, and he knows that the victim of the crime that he pleaded guilty to is his wife. Right. I understand that. He just now thinks it's not an element of what he pled to. Exactly. And Hayes says it doesn't matter. The Supreme Court said that doesn't matter. So what he's complaining about to me at the end of the day is ineffective assistance of counsel about a collateral consequence. There was a collateral consequence for this offense, and he chose to plead thinking, I'm not going to be subject to that collateral consequence. But because he got bad advice, he very well may have ineffective assistance in how that all played out. But why doesn't that run towards that conviction, not this one? So you're right. I'd like to, and I raised this in my brief, there's a case out of the Seventh Circuit called Triggs, right, where the Seventh Circuit allowed the defendant to withdraw his plea to 922 G1. And the courts basically said... But that's not the relief you're seeking here. No. But I think that the elements that they're looking at for knowledge... Because that's relevant to whether he knew what he was doing when he pled. No, it was... So what the court said is the knowledge that he needs to... The knowledge that he was a criminal misdemeanor of a domestic violence situation, that they looked at the colloquy from the district court where none of the elements were explained to Mr. Triggs. We don't even have a colloquy here, right? We know that they said that the statute itself is rather confusing. And so it's the same here. But your client admitted on the record that he knew the victim of this offense for which he pled guilty was the wife. The wife. I agree. He admits to that fact. Right. It wasn't in the colloquy. It was actually in testimony that he admitted to that, correct? Right. Correct. Correct. But I think your honors are sort of ignoring... I mean, I understand. These are what the elements are. We're going to check those boxes. But we're ignoring the Rehab and Ruan cases, which do talk about... You know, mens rea isn't just checking boxes. It's saying, what was in my mind at the time? And what was my... We don't want to criminalize people. How is it different from the person who says, it's in my mind, I didn't know about that it was... I'm a felon. I knew that. And I didn't know anything about this federal law you're talking about to prevent people from having a gun. I just knew nothing about that. I had this gun in good faith because I didn't know. So you agree the Supreme Court said no to that argument? I'm not sure that that's the case, Your Honor, because in Rehaf itself, for example, the guy was clearly an unlawful alien. We've had cases in the First Circuit where they say, oh, the felony conviction was so long ago, they may not have remembered. I mean, there's ways that you can... It's not just checking the box. He was a felon. He was a... That would be not remembering you were a felon. What's that? That would be not remembering you had the status of being a felon. Why is it different to say that I thought it was okay for me to possess this gun? I didn't have a bad... I acted in good faith. Because the person who is a felon and knows they're a felon does not have the defense of saying, I didn't know that even though I was a felon, I couldn't possess the gun. Well, I still think that men's Reha... Maybe there's some lurking due process concern with these status-based predicates for offenses in which the link that Judge Aframe is talking about, that you don't have to prove as a matter of proving the offense. I mean, it's not like I'm blind to what is concerning you, right? This is a person who knows one thing and knows they did another thing. And it's not intuitive that everybody walking around knowledge thinks if I can't do one, it's obvious I can't do that. Now, maybe in this case, that's not so true. But you could imagine circumstances where status A doesn't obviously correlate with conduct B being prohibited. And so I'm caught unawares, and it almost feels like a kind of strict liability offense, which normally we don't allow. But the way that is restricted is the due process clause, to the extent that there's a due process limitation on Congress choosing to make you liable for things when there's a connection you didn't know about. And that's not the challenge here. I'm not faulting you for not bringing that challenge, but it's hard to see how within the bounds of the elements of the offense that that linkage is something that you need to know about. And since it's not, it's hard to see why he's entitled to put evidence on about that irrelevant fact. Well, again, I'm just coming back to the post-Rehave cases where, and also, frankly, the Sixth Amendment, which talks about, because, and oh, sorry, I just want to back up to one thing that I do think is important. The government put on the testimony of the ADA from the state court case, right? And even though the government said, you know, knowledge of, ignorance of the is not a defense, they had the DA testify that it was widespread knowledge at the time that my client entered that plea that that would result in a federal ban on gun possession. So once they introduced that evidence, my client, that leaves with the jury that, oh, this guy, you know, obviously knew the element. I know what you're saying. There's evidence. He made admissions. But he could still have, his attorney could still have made arguments because he did back off from some of that in his current testimony. What about the relevance of that first thing? I mean, that wouldn't be relevant either, right? What wouldn't, I'm sorry, Your Honor? The thing that the ADA said. Well, it shouldn't, I mean, but once it's introduced, it leaves this impression with the jury that my client just completely ignored the law. And I do think that goes to his mens rea. And so by introducing that for the judge not to allow my client to testify that he thought it was okay and not to allow his trial counsel to impeach him. Was that argument made to the judge that independent of the relevance of the testimony you wanted to put in, if it was being put in alone, it had to be allowed given what was allowed? It was. And I can't remember the exact, but I did read through today exactly what happened. And I believe that the trial counsel did a good job of preserving both of those arguments because his point was essentially, he wasn't allowed even to impeach the ADA with evidence that he had from the guy that would testify that, I'm sorry, I finished this up. He wasn't even allowed to impeach the ADA by asking him whether he had told trial counsel about that. And you may decide that's all irrelevant, but I would argue under Supreme Court precedent, it's highly relevant. Thank you. Thank you, Your Honor. Thank you, counsel. Will attorney for the appellee, please come up and introduce yourself on the record?  May it please the court. Good afternoon at this point. My name is Lindsay Feinberg. I'm here today on behalf of the government. This case raises two important issues. The first is an evidentiary challenge, Willie Miner's third jury trial in the District of Maine. The second issue is a constitutional challenge to 922 G9. The panel didn't seem to have any questions about 922 G9 in Mr. Miner's counsel's presentation, so I can start with the evidentiary issue, but I'm happy to address any 922 G9 questions. I'd like to begin where the discussion ended, which is this idea that ADA Nicholas Warden testified at trial about what was and wasn't common knowledge at the time. And I think it's important to make clear in the record that this wasn't testimony that was elicited from the government. It's true that the government called Mr. Warden as a witness, but if the court looks at the record, specifically government's appendix 179-191, it will be very clear that the information that's being complained of was actually elicited in cross-examination by Mr. Miner's counsel. So this is not information that the government somehow foisted into the record to try and play dirty tricks or play unfair here. Rather, it's something that was brought up strategically, I anticipate, by defense counsel for Mr. Miner to try and get into exactly these issues that, as the court has made clear, I think, by its questionings, were irrelevant. And they were irrelevant for the exact same reasons that Judge Levy lays out in the record. And just as how the ordering of the request for the excluded testimony came up, after this evidence comes in on cross, was the fight over whether the testimony that was all well before that? So this issue was actually teed up in Mr. Miner's second trial, to go all the way, way back, Chief Judge Barron. You know, this was a motion in limine that the government filed before the second jury trial about excluding Mr. Miner from presenting testimony about his subjective beliefs. Prior to the third jury trial, after the en banc decision came down, we renewed that motion in limine, and then we supplemented it with additional facts. The court first addressed the issue on the morning of the jury trial and sort of said very clearly to the parties that Mr. Miner couldn't address in his opening statement and defense counsel couldn't raise on cross these issues of subjective belief until we see how the evidence comes in, until we see how the government's case comes in, and then the court would make a final ruling. So when we get to Mr. Warden's testimony itself, the government, as the record reflects, sort of objected repeatedly and vociferously over questions that were designed to get into exactly that, exactly what Chief Judge Levy had told the parties was not fair game at the outset. Why was the ADA called? The ADA was called, Your Honor, and I can actually answer this because I was on the trial team, because the case was so old, we didn't have a copy of the plea colloquy itself. We couldn't find a recording of it. So what we presented to the evidence that was similar in the second trial and the third trial is we had certified court records, and then we had Susan Beamant, who was the clerk of court at the time, sort of testify as to how those records worked, and then ADA Warden sort of reviewed those records with the jury to explain how you could read a docket sheet in a way that would be sensible to lay people. So that was the reason for him being called. And then on cross, these issues of subjective knowledge were invited by the? They were invited by defense counsel, yes, Your Honor. And did government object to that line? Repeatedly. And Judge Levy? Sustained a few, overruled a few. So some information was in fact put before the jury. And then now that that information's come in from the ADA, is there then a request to put, to allow the questioning that was denied or not? There is then additional discussion at the end of the first day of the jury trial, because of course, sort of due to the unique nature of this case, we had Mr. Miner's testimony from the first jury trial that was read back. So there was some skirmish about what parts of that were going to come in. And then there was also a voir dire done outside the presence of the jury of George Hess, who was Mr. Miner's former state defense counsel. So the court had an opportunity to get a preview of what Mr.? At that time, was the argument made in light of what the jury's now heard from the ADA, I have to be able to put on Mr. Hess to counter that? No, Your Honor. I don't think it was made in exactly that way. There was an argument that Mr. Hess should be allowed to testify. But if I'm recalling correctly, the argument at that time, at least as it was framed to Judge Levy, was that all of this goes back to, similar to what the court previously heard, his state of mind and what would have motivated him to do what he did when he accepted this plea. Not necessarily, now I need to put on Attorney Hess for that reason. And I would add actually, in the portion of the record where this is discussed, a suggestion is made that's incorrect by federal defense counsel at the trial level, which is that Mr.? Or ADA warden affirmatively misadvised Attorney Hess, that there was testimony given to that effect. That's very clearly not anywhere in ADA warden's testimony. That's a misrecollection. And any suggestion to Judge Levy that that was the case is simply not borne out by the actual testimony itself. And it's clear when Judge Levy sort of looks at the totality of what's been put before him in the government's case-in-chief and in the voir dire, and in the knowing that Willie Minor is going to testify again at this trial, that he makes the exact correct call, informed by this court's en banc decision, that this is irrelevant. Just, if one were to read the record differently, and I'm not saying I would, and thought that there was an objection post the cross by the defense counsel, based not on the general contention that I should be able to put on Mr. Hess to show his knowledge, but that in light of what the ADA has testified, I have to be able to put on evidence to show that's not true, what would your position be? Well, I think that would be practically an issue here, because it's clear that when Mr. Hess was voir dired, that he had limited recollection of the case. But how about legally? When somebody objects, right? So, I'm sorry, when it comes out on cross, do you have, I mean, if it comes out on direct, then the answer is fair response, they just brought that out on a direct. But when it comes out on cross, so it was elicited by the defense, do they still have that same fair response kind of argument, or do they lose it because they're the ones who elicited it? The latter, your honor. And I would add, too, not only do they lose it because they elicited it, but they also should lose it because the court said at the outset of the trial, don't get into this. And they went ahead and got into it anyway. It's just the confounding thing is that you objected on precisely that ground to that testimony being heard on cross, but it sounds like the district court judge denied some of those objections and therefore allowed that testimony to go, notwithstanding the earlier ruling on the motion for limiting. I mean, I don't know if that's, because in the context of those particular objections, it just wasn't clear exactly what the ADA was going to say at that point. Is that the idea? I think that's the idea, your honor. And if the entire exchange is reviewed, I don't remember exactly how many objections were sustained versus overruled. I'd say it was roughly 50-50, but there was a series of objections made, and I don't know how they tracked with each of the specific questions. But it's certainly here, I'm reviewing the record. And I guess what I mean, I guess I, so I mean, we gave your friend there a kind of, you know, a hard time, but I'm not, I'm not like blind to what she was saying. I mean, it is concerning to me in the sense that this isn't the normal ignorance of the law, I just didn't know. Like, I was affirmatively misled by my lawyer, and it is troubling. And is there no remedy or way, like, how should that have been? I mean, I don't think you can just stand and say, well, that's no problem at all. And maybe the answer isn't here, or I don't know. But what do you think the answer is to that? I think the answer, and it's sort of built in the statutory framework for domestic violence misdemeanors too, is to seek to have your conviction set aside in the court in which you were convicted. If, in fact, he had a viable habeas claim, because he had an ineffective assistance of counsel claim, because his State defense attorney was misadvised in 2009 and 2010 about how the Federal prohibition worked, then that would be something that should have been taken up in State court in the first instance many years ago, and may have obviated the three jury trials that have now taken place, after which three different juries have convicted Mr. Minor of the same status offense. Given that he pled to that offense, if he hadn't pled, that wouldn't be much of a... In other words, for the person who's convicted after a trial of the predicate offense, and the judge says, and his attorney says at that time, don't worry about it, no way you can be barred from having a gun, then goes to buy a gun. In that context, there's no recourse, is there? Well, I think there would still be a recourse, Your Honor. I'm thinking of cases in which a defense lawyer has affirmatively misadvised their client, meaning that their plea couldn't be knowing involuntarily made. I'm saying in the case where there wasn't a plea to the predicate. Oh, I take your point. Yes. Well, I suppose in that case, the only distinction could be drawn is if there was later clarifying law from the highest court as to what needed to be shown, and if the element somehow didn't track, then perhaps they'd have recourse. But in the general, in the ordinary course, I think Your Honor's exactly right. There is no recourse. Yes. Except for maybe not the plea here, if he was challenging whether the plea was knowing involuntary, was there a plea? There was no plea here to the ultimate offense. I'm sorry, to any of the Federal charges or to the State? To the Federal charges. To the Federal charges, there was no plea. There were three different trials. But if there had been a plea to the Federal offense, of course, this set of issues would be relevant to whether it was a knowing involuntary plea. Potentially, yes. And did this come up in sentencing as a major mitigating factor? He got time served in the end, right? He did, Your Honor. I mean, this is his... It feels very mitigating. It did not come up as a mitigating factor at sentencing. Various sentencing transcripts sort of set out a lot of things that may not be germane to what the Court actually needs to decide today about Mr. Minor's history. And that was why he initially received a pretty significant sentence. And then following the second trial and the court's en banc ruling, he had already served a significant amount of time. So the government made the recommendation for time served. It was informed not by the knowledge bit of it, but by the amount of time he'd already spent in custody. Counsel, can I ask you about the Second Amendment issue? I think from your briefs, it seemed that you were suggesting we could consider a whole host of facts in sort of assessing whether the conviction here qualifies or not. And I'm just wondering, again, you heard us asking the previous set of attorneys, what are we supposed to look at to do the analysis? I mean, you really think we should go quite deep into the facts, the conduct of previous convictions that aren't even at issue here, what's happened, I think, maybe even afterwards with the girlfriend, if I understand correctly. What is your basis for making that argument? And how do you think that would work on a practical level? Well, I think this case is somewhat unique, and I was listening to that line of question with some interest, because the PSR here, which forms the basis of the facts that the government cites about Mr. Miner's violent history, is not a new PSR. This is a PSR that takes us through the trajectory of his case, which, of course, puts him in a slightly different position than most people, meaning all of these facts had previously been dealt with in the first instance, then in the second instance, and then in the third instance, and they were never objected to. So we don't really have an issue about any details being disputed. But I would say more generally, Your Honor, it is the government's position that you can look at what underlies the conduct. And what I would point the court to that maybe isn't dispositive because it doesn't squarely address the issue, but the closest I've come across in preparing is I submitted a 28-J letter to the court about a recent Second Circuit decision in Simmons. There's also a Tenth Circuit decision called Jackson. And in both of those cases, which are post-Rahimi constitutional challenges to 922 G9, both constitutional as applied, the courts do set forth with some detail the underlying conduct that led to the relevant domestic violence misdemeanors. And in Mr. Jackson's case in particular, I think it's interesting because the Tenth Circuit doesn't just rely on what was charged in the indictment, which gets to a question this court was asking earlier, but rather talks about another qualifying domestic violence instance that was not included in the indictment. So from those, I would submit that the court can take a broad look. So you're suggesting that courts do an individualized determination that includes looking at every single potential relevant fact to decide constitutionality only if the court disagrees with the government that as-applied challenges are appropriate in the first instance? How do we distinguish? The one thing that, if I understand the defendant's point on the Second Amendment question, in Rahimi, there was a finding that this person, by virtue of the restraining order, poses a threat, right? Here, we just have a past incident for which there was a conviction, but no present finding at the moment of the purchase, the threat. So just in terms of, is this just like Rahimi? No, it's not just like Rahimi. That doesn't mean it's not within the realm of Rahimi, but we then are back to a little bit just like we were with unlawful drug use. When does past conduct for which you were convicted yield a basis for a predictive finding that's constant with our tradition to justify disarmament? Is that the right way to think about it? I think it is. And I actually think, Your Honor, that 922 G9 is almost like 922 G8 on steroids. So I think Rahimi is pretty informative here. And I would add that there are three things that I think make it especially informative in light of Your Honor's question. So first- Just to push on that point. I mean, no matter how old the offense is- Yes, Your Honor. Rahimi is your dangerous now. I mean, that's the whole idea. There's an order that says, right now, you are dangerous. And the other thing about Rahimi that I think is so different and in some ways, I think, made it a relatively easy case is it's not a permanent disarmament. So not only is there a credible threat, but you're disarmed for a very limited amount of time under 922 G8. Yes. My apologies, Your Honor. I didn't mean to speak over you. 922 G9 is not necessarily permanent either. There are certain categories of individuals who can be charged under 922 G9. Specifically, if you have a dating relationship with a person, where if five years have elapsed, then it is not permanent disarmament. And there's also the opportunity, of course, to have your conviction set aside, expunged. But to me, the idea would have to be something like, all right, this is a big deal. You got convicted. Like, this wasn't a momentary thing. This went far enough that a prosecutor, you either pled guilty to it or brought you to trial. And that whole proceeding took place, which is a big deal. And now, you have that status. And what that status says is, it went far enough that we do think you're the kind of person who is likely to potentially to engage in that conduct. And then, as the Castleman and Justice Sotomayor has written, adding guns to that mix is the part that makes it really, really dangerous, and potential homicides. And so to me, if I'm thinking about Rahimi, temporary. But that relief was temporary because that was no trial for Rahimi. It was either an, I don't exactly know how the order came. Is the difference here that this was the full criminal process beforehand? Yes, Your Honor. I think while 922 G9 is typically a longer and sometimes permanent prohibition, that flows, exactly as Your Honor is suggesting, from the correspondingly higher standard that you need to obtain a conviction, a misdemeanor criminal conviction, as opposed to a temporary restraining order. That's part and parcel. So if the Court has no further questions, thank you. Thank you, Counsel. That concludes arguments in this case.